UNITED STATES of America ex rel. Joseph G. MANGIARACINA

v.

John D. CASE, Warden.

Civ. A. No. 76–2820.

United States District Court, E. D. Pennsylvania.

Aug. 11, 1977.

Peter J. Verderame, Langhorne, Pa., for plaintiff.

Stephen B. Harris, First Asst. Dist. Atty., Doylestown, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Joseph Mangiaracina has petitioned for habeas corpus relief pursuant to 28 U.S.C. § 2254. Although Mangiaracina raises several arguments in his petition, the only issue before the Court is his claim that his Sixth Amendment right to a speedy trial was violated by the Commonwealth's 29 month delay in bringing him to trial. Petitioner's other claims have been denied on the basis of the United States Magistrate's Report and Recommendation, filed on April 14, 1977.

Mangiaracina, a Bristol Borough police officer, was convicted of falsifying public documents by altering certain forms to show that applicants for drivers' licenses had successfully passed the drivers' examination, when in fact they had failed the test, or not even taken it. Upon conviction, petitioner was sentenced to a term of imprisonment of not less than six months or more than one year, although he is presently free on bail pending the disposition of this petition.

■ One preliminary matter must be disposed of before the merits of the petition can be considered. The Commonwealth contends that I acted improperly in permitting an evidentiary hearing, rather than limiting my consideration to a review of the state record. In the Commonwealth's view, the evidence presented at this hearing must be disregarded. However, both the habeas corpus statute and the pertinent Supreme Court decision require a hearing when the material facts were not adequately developed at the state court hearing. 28 U.S.C. § 2254(d)(3); *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In this case, neither the reasons for the long delay nor the possible prejudice suffered by the petitioner were fully developed at the State court hearing. Therefore, an evidentiary hearing was appropriate. Moreover, even if a hearing was not required in this matter, it could be granted within the discretion of the Court. See *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Consequently, I will consider the evidence received during the hearing in this Court, as well as the evidence contained in the State court record.

Although the right to a speedy trial is a fundamental constitutional right, it is a right which cannot be defined precisely. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that constitutional speedy trial questions should be resolved by means of a balancing test, and the Court identified four factors which should be considered: 1) length of delay, 2) reason for the delay, 3) the defendant's assertion of his right, and 4) prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. 2182. After evaluating these factors in the present case, I have concluded that the petitioner's Sixth Amendment rights were violated, and his petition must be granted.

■ The first factor to be considered is the length of the delay. As noted by the Magistrate in his Report and Recommendation, the 29-month delay between Mangiaracina's arrest and his trial is sufficiently long to justify further inquiry into the other factors identified in *Barker v. Wingo*, *supra*. See *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976).

Another important factor is the reason for the delays. In this case, as in most speedy trial cases, many different explana-

tions have been offered for various portions of the 29-month delay between petitioner's arrest on November 23, 1971 and his trial on April 15, 1974. Some of the delay can properly be attributed to the defendant. For example, arguments were postponed from September 15, 1972 by agreement of counsel, and from October 25, 1972 because of defense counsel's illness. Therefore, the delay from September 25, 1972 until January 29, 1973, when argument was held, cannot be charged to the Commonwealth.

■ Other portions of the delay, however, must be weighed against the prosecution. The first indictments against Mangiaracina were not returned until May 5, 1972, more than six months after his arrest. The Commonwealth has argued that this delay was caused by the complexity of the case and the need to interview more than 500 witnesses. However, the investigation apparently was completed by the time Mangiaracina was arrested in November, 1971, so no good explanation has been provided for the further delay before indictment. Additional delays were caused by the insufficiency of the original indictments, which were quashed on April 6, 1973. At the same time, several counts of indictments issued in November, 1972 were approved, and the case was then ready for trial.[1] As the Magistrate pointed out, pre-indictment delays or delays due to the inadequacy of indictments cannot be attributed to the defendant, since they are caused by the mistake or negligence of the prosecution. While such delays should be weighed less heavily than deliberate delays, they must be counted against the government, since the government has the ultimate responsibility for providing the defendant with a speedy trial. See *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182. Thus, most of the delay prior to April, 1973 must be considered, although it does not strongly tip the balance against the Commonwealth.

The period after April 6, 1973, however, is critical, and the Commonwealth's reasons for this delay generally are inadequate. The only explanation offered for not trying Mangiaracina in April, May or June of 1973 is the following testimony of the assistant district attorney who was handling the case:

> "I don't know why I didn't bring it in June, except I was handling—was immersed in McDonough [a related case] at the time, drawing up new indictments and preparing for the preliminary hearing." (*Commonwealth of Pennsylvania v. Mangiaracina,* Transcript for April 15, 1974, at 27).

The Commonwealth contends that this case could not be tried in July or August because the court did not schedule summer sessions. In September, the assistant District Attorney who had been assigned to the case left the district attorney's office. Although an assistant who had previously handled the case was still in the office, a new assistant took over in October. Nevertheless, Mangiaracina was not tried until April 15, 1974. In the meantime, the related McDonough case was tried in February, 1974, even though McDonough had been arrested and indicted after Mangiaracina. The assistant district attorney gave the following explanation for his decision to try McDonough first:

> "I initially directed my attention towards the McDonough case because I had been advised by Mr. Cardone that was perhaps the one that I should proceed upon initially since it occurred more recent and the fact may be fresh in the people's minds and so forth." (*Commonwealth of Pennsylvania v. Mangiaracina,* Transcript for April 15, 1974, at 28.)

The prosecution's commendable desire to try the McDonough case while the facts were fresh in people's minds only underlines the unfairness of further delaying the older Mangiaracina case. The Commonwealth has offered no reason why Mangiaracina's case could not have been tried before McDonough's, and in view of the long de-

---

1. Additional indictments against Mangiaracina were approved by the Grand Jury on May 4, 1973.

lays that had already occurred in the prosecution of Mangiaracina, his case should have been tried first. In fact, the order of the trials may have been an attempt to gain a tactical advantage for the prosecution, and if so, the delay certainly would have been improper. See *Barker v. Wingo, supra*, at 531 n. 32, 92 S.Ct. 2182.

The delay after April, 1973 must be weighed strongly against the Commonwealth. While portions of the delay may have been partially justified by the court calendar or a change in personnel, the Commonwealth has failed to provide any reasons for most of the delays after April, 1973. Once a case has been pending for 18 months, additional unexplained and substantial delays cannot be tolerated.

■ The third factor identified by the Supreme Court in *Barker* is the defendant's assertion of his right. Since some defendants may wish to delay in the hope of gaining some advantage, a defendant who fails to assert his right to a speedy trial will have difficulty proving that he was denied a speedy trial in violation of the Constitution. See *Barker v. Wingo, supra.* On the other hand, where a defendant has made his desire for a speedy trial known to the prosecution, further delays must be examined carefully. A defendant's assertion of his right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker v. Wingo, supra* at 531–32, 92 S.Ct. at 2192.

In this case, Mangiaracina requested on August 23, 1973 that the case be promptly listed for trial. Nevertheless, the trial did not take place until April 15, 1974, some eight months later. Thus, Mangiaracina did assert his right, and this factor must be weighed in his favor.

■ The fourth element of the Supreme Court's balancing test is the prejudice to the defendant caused by the delay. Contrary to the Commonwealth's contentions, an affirmative showing of prejudice is not essential to prove a denial of the constitutional right to a speedy trial. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). On the other hand,

prejudice to the accused must be an important consideration in evaluating a speedy trial claim. In *Barker v. Wingo, supra*, the Court identified three interests which must be considered in assessing prejudice.

"(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193.

Because Mangiaracina was not incarcerated after his arrest, the first interest is not relevant here. Similarly, Mangiaracina has failed to establish any significant prejudice to his defense. Although he has made some vague allegations of loss of memory, he has not shown how an impaired memory might have affected his defense. Moreover, since the petitioner has consistently denied any knowledge of or participation in the scheme for which he was convicted, it is difficult to see how a loss of memory could have hurt his defense. As the Commonwealth points out in its brief, an alibi defense could not have been successful, since Mangiaracina's presence at any particular time or place was not material to his conviction for conspiracy.

Thus, the only prejudice which must be considered is the petitioner's anxiety and concern while awaiting trial. As the Supreme Court stated in *Barker v. Wingo, supra*, 407 U.S. at 533, 92 S.Ct. at 2193, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." At the hearing before this Court, Mangiaracina and several witnesses testified to his anxiety, loss of income, and difficulty in finding a job. Mangiaracina undoubtedly did suffer from a certain amount of anxiety and hardship after his arrest. However, the evidence did not establish prejudice significantly different in kind or degree from that suffered by all defendants. Unlike the defendant in *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976), Mangiaracina did not experience severe mental disturbances requiring inten-

sive psychiatric therapy. I find that the defendant has established only minimal prejudice, so that this factor cannot be counted strongly in his favor.

 Having analyzed the four factors enumerated by the Supreme Court, I am now required to engage in "a difficult and sensitive balancing process." 407 U.S. at 533, 92 S.Ct. at 2193. Although this is an extremely close case, I find that the petitioner's right to a speedy trial was denied. Two factors mandate this conclusion. First is the lack of adequate reasons for the delays after April, 1973. In his Report and Recommendation of April, 14, 1977, the Magistrate stated that "a hearing should be held for the purpose of taking testimony to determine the reasons for the delay." (Report at 12) Despite this clear warning that further explanations were needed, the Commonwealth chose to present no witnesses at the hearing before this Court. Secondly, the fact that the petitioner did request a prompt trial distinguishes this case from many others in which speedy trial claims were denied. See, e. g., *United States v. Simmons*, 536 F.2d 827 (9th Cir. 1976); *United States ex rel. Spina v. McQuillan*, 525 F.2d 813 (2d Cir. 1975); *United States v. Mulligan*, 520 F.2d 1327 (6th Cir. 1975), *cert.denied*, 424 U.S. 919, 96 S.Ct. 1123, 47 L.Ed.2d 325 (1976). Both the lack of adequate reasons for the delay and the petitioner's request for a prompt trial are crucial in this case. It is quite likely that I would deny the petition if Mangiaracina had been tried within a few months of his request, or even if he had been tried in February, 1974, *before* McDonough. However, under the circumstances actually presented in this case, the balance is tipped in the petitioner's favor.

Undoubtedly, other courts might apply the "sensitive balancing test" differently. Some courts have found in favor of the government when presented with speedy trial claims based on similar facts. See, e. g., *United States v. Palmer*, 537 F.2d 1287 (5th Cir. 1976); *United States v. Fairchild*, 526 F.2d 185 (7th Cir. 1975), *cert.denied*, 425 U.S. 942, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). Other courts, however, have found in favor of defendants after comparable delays, despite a weak showing of prejudice. See, e. g., *United States v. Brown*, 172 U.S.App.D.C. 92, 520 F.2d 1106 (1975); *Jones v. State*, 279 Md. 1, 367 A.2d 1 (1976). I believe that the government cannot be permitted to delay a trial for 29 months, without offering better explanations than were offered here, especially when the defendant has requested a prompt trial. The right to a speedy trial is specifically mentioned in the Constitution, and that right would be weakened if it were not affirmed here. The writ will be granted.